IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID CHONG-FOOK LEONG, JR., #A1039588, | CIV. NO. 06-00077 SOM-LEK |
| Plaintiff, | ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915 |
| vs. | |
| CLAYTON FRANK, et al., | |
| Defendants. | |

**ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915**

*Pro se* plaintiff David Chong-Fook Leong Jr. filed this prisoner civil rights complaint on February 7, 2006.[1] Leong names Clayton Frank, Halawa Correctional Facility ("HCF") Warden, Governor Linda Lingle, the Director of the Department of Public Safety, and Doe Defendants I-V, in their individual and official capacities, as defendants (collectively "Defendants"). For the following reasons, Leong's Complaint is dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

**BACKGROUND**

Leong is currently incarcerated at Waiawa Correctional Facility, although he was incarcerated at Oahu Community Correctional Center ("OCCC") when the actions complained of in his Complaint occurred, and at HCF when he commenced this action. In Count I, Leong claims that in August 2004, when he was

---

[1] The court did not screen Leong's Complaint pursuant to 28 U.S.C. § 1915 until after Leong filed a sufficient *in forma pauperis* application.

incarcerated at OCCC, another inmate spilled hot soup on his back, causing pain and scarring.  Leong appears to claim that Defendants failed to protect him from this incident.  (*See* Compl. 2.) (stating Defendants "denied [him the] right to receive necessary protection from the incident during feeding inmates[.]")  Leong alleges that Defendants violated the Eighth Amendment and were deliberately indifferent to his safety when they failed to "watch inmates when we eat food[.]"  (Compl. Inmate Grievance, dated Dec. 14, 2005, att. to Compl. at 2.) Leong alleges that he suffered psychological pain and extreme mental and emotional distress because of the scar he received on his back from the incident.  (*Id.* 4 ¶ 4.)

In Counts II and III, Leong claims that he went to the prison law library to "get help from inmate jailhouse lawyers on how to take the matter to court" and was not allowed to seek such help.[2]  (Compl. 4 ¶ 3.)  Leong states that the prison's refusal to allow him to utilize a jailhouse lawyer violates an unspecified Hawaii Supreme Court opinion,[3] as well as the Due

---

[2] "Jailhouse lawyers," also called "inmate writ writers," are prisoners who assist other prisoners on applications for the writ of habeas corpus and other legal matters. *See Bounds v. Smith*, 430 U.S. 817, 823 (1977).

[3] Leong is apparently referring to *Hutch v. Hawaii*, 114 P.3d 917 (2005), which held that inmate Eugene Hutch was entitled to an evidentiary hearing on his claim that he was punished for violating a repealed prison rule prohibiting inmates from providing legal assistance to other inmates without prior approval from prison officials.  *Id.* at 919.

Process Clause, the Equal Protection Clause, the First Amendment, and the Privileges and Immunities Clause of the United States Constitution.  (*Id.* 5-6.)

Leong avers that he completed the prison administrative grievance process prior to filing his Complaint and attaches his grievances to the Complaint.  These grievances do not complain of the denial of medical care, but are focused on the denial of access to jailhouse lawyers.  They do not include the prison's responses to Leong's complaints.  This court notes that Leong's Step III Grievance No. 113945 is dated as received by prison officials on February 5, 2006, which is the same day he delivered the Complaint in the present case to the prison for filing.  (*See* Compl., envelope rec'd by prison "2-5-06," postmarked Feb. 6, 2006.)  Moreover, Leong signed the Complaint on February 4, 2006, the day *before* he filed his Step III Grievance.[4]

Leong seeks $50,000 for his claims, attorney's fees, and "whatever else the jury dee[ms] necessary."  (Compl. 7.)

---

[4]Exhaustion is not a pleading requirement but an affirmative defense that defendants have the burden of raising.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). While *Wyatt* acknowledged in dicta that "a prisoner's concession to nonexhaustion is a valid ground for dismissal[,]" Leong affirmatively asserts that he has exhausted all available administrative remedies.  This court, therefore, does not dismiss Leong's Complaint *sua sponte* for failure to exhaust, but only relates these facts to highlight the apparent discrepancy in his statements.

**LEGAL STANDARD**

Federal courts must screen all cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). The court must also dismiss a complaint or claim at any time, notwithstanding any fee that may have been paid, if the court determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2).

The court must construe *pro se* pleadings liberally and afford the *pro se* litigant the benefit of any doubt. *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 558 (9th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Unless it is absolutely clear that no amendment can cure the defect . . . , a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to

dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

I.  Defendants Sued in Their Official Capacities are Entitled to Eleventh Amendment Immunity with Respect to Claims for Damages.

Leong names Defendants in their official and individual capacities. This court lacks jurisdiction over Leong's claims for damages against Defendants in their official capacities. Those claims are barred by the Eleventh Amendment, which "prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267-68 (1997). Defendants, as state officials, are immune from suit for damages in their official capacities. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Claims for damages against Defendants in their official capacity are dismissed.

Eleventh Amendment immunity does not bar all claims against state officials in their official capacities, and it does not bar claims against state officials sued in their individual capacities. While state officials acting in their official capacities may not be sued in federal court for damages or violations of state law, they may be sued in federal court for prospective injunctive relief sought in connection with alleged violations of federal law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839. Leong, however, does not seek prospective injunctive relief.

The Eleventh Amendment is not a bar that may be cured by the filing of any amended complaint. While this order gives Leong leave to submit an amended complaint, he may not reassert claims dismissed here as barred by the Eleventh Amendment. That is, Leong may not reassert damage claims against Defendants in their official capacities.

II.  Leong has no Constitutional Right to a Jailhouse Lawyer.

The primary thrust of Leong's Complaint is that he had to sneak help from a jailhouse lawyer, which he alleges violated his constitutional rights, presumably by denying him access to the court. Inmates have a constitutional right of access to the courts guaranteed by the Fourteenth Amendment. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right "requires prison authorities

6

to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828 (footnote omitted). "[P]rison law libraries and legal assistance programs [however,] are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (citation omitted). To establish a violation of the right of access to the courts, a prisoner must first establish that he has suffered an actual injury, and thus has the standing required to invoke the federal court's jurisdiction. *Id.* at 349.

First, Leong has not established that he has been actually injured by the prison's alleged prohibition against jailhouse lawyers. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. Further, the right of access is only guaranteed for certain types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging the conditions of confinement. *Id.* at 354. Even among these types of claims, actual injury will exist only if "a *nonfrivolous* legal claim has been frustrated or was being impeded." *Id.* at 353 and n.3 (emphasis added). Leong states numerous times that he went

to the law library.  (*See* Compl. 4. ¶ 3.)  He was obviously able to file this action, with or without help from a jailhouse lawyer, and points to no missed filing deadlines or other impediments to any existing or contemplated litigation.  The record before this court does not even suggest any actual injury to Leong's access to the court.

Second, inmates generally possess no constitutional right to provide legal assistance to other prisoners.  *See Shaw v. Murphy*, 532 U.S. 223, 225-32 (2001) ("beyond the protection normally accorded prisoners' speech," prisoners possess no first amendment right to provide legal assistance to other inmates).  Nor do inmates have a free-standing right to receive legal advice from another inmate, if they have other reasonably adequate opportunities to present their claims.  *Id*. at 231 n.3 (citing *Lewis*, 518 U.S. at 350-51)).  As the Supreme Court has stated, "Although supervised inmate legal assistance programs may serve valuable ends, it is 'indisputable' that inmate law clerks 'are sometimes a menace to prison discipline' and that prisoners have an 'acknowledged propensity . . . to abuse both the giving and the seeking of [legal] assistance.'" *Id*. at 231 (internal quotations omitted).  Given his access to the law library and success in filing this suit, Leong's claims, insofar as they are based on the prison's alleged prohibition against jailhouse lawyers, do not involve any actual injury as defined by *Lewis*,

518 U.S. at 351, and are dismissed for failure to state a claim, with leave granted to amend, if possible.

### III. Leong Fails to State a Claim Against Defendants in Their Individual Capacities.

Leong's bare allegations against Defendants also fail to state a claim against them in their individual capacities.  There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002).  To state a civil rights claim against an individual defendant, a plaintiff must allege facts, not mere conclusions, showing a defendant's "personal involvement" in the alleged constitutional deprivation or a "causal connection" between a defendant's wrongful conduct and the alleged constitutional deprivation.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

A supervisor may be held liable in his individual capacity "for his own culpable action or inaction in the training, supervision or control of his subordinates."  *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).  A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the

constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citations and internal quotations omitted). However, an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Leong alleges no facts showing Defendants' personal involvement in the alleged violations here. First, Clayton Frank is the Acting Warden at HCF, and was not the warden at OCCC when the initial incident with the hot soup occurred.[5] Frank could not have been involved in claims over an incident that occurred at OCCC.

Further, Leong makes no allegations that Frank, Governor Lingle, or the Director of the Department of Public Safety were involved in the hot soup incident, denied Leong medical care after the incident, or were in any other manner deliberately indifferent to Leong's safety or serious medical needs. Leong

---

[5]If Leong has named Frank in connection with the alleged denial of access to a jailhouse lawyer at HCF, this is unclear from the Complaint. Moreover, Leong not only fails to allege facts tying Frank to that issue, but, as discussed above, this allegation fails to state a cognizable claim for a constitutional violation.

simply alleges no facts tying Frank, Governor Lingle, or the Director of Public Safety to any of the alleged violations here, apparently naming them because of their general supervisory responsibilities over HCF, the Department of Public Safety, or the State of Hawaii.  This is insufficient to state a claim against them in their individual capacities.  Accordingly, Defendants Frank, Lingle, and the Director of Public Safety, are dismissed in their individual capacities, although Leong is given leave to amend, if possible, to show their personal involvement in his claims.

IV. Leong's Failure to Protect and Medical Care Claims Are Dismissed For Failure to State a Claim.

In addition to his right of access claim, Leong also checked the boxes on his Complaint stating that his claims involve "medical care" and "threat to safety." (Compl. 4-6.)  Other than this, Leong makes no allegations and provides no facts stating that any prison officials were involved in the hot soup incident, or denied Leong medical care after the incident, or were in any other manner deliberately indifferent to Leong's safety or serious medical needs.

A. Leong's Medical Care Claim is Dismissed.

Deliberate indifference to a prisoner's serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*,

429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1998). Deliberate indifference involves two elements: (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. *McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). To establish "deliberate indifference," a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need. *McGuckin*, 974 F.2d at 1060. Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care. Id. at 1059-60.

Accepting Leong's allegations as true, Leong's injury was serious, as it required medical care and resulted in a scar. Leong, however, neither claims nor alleges any facts showing that *any* prison official either delayed or denied him medical care after he was burned. He admits, in fact, that he was seen by a doctor, who diagnosed the injury as serious, and that his injury was treated. (*See* Compl. Grievance No. 113943, dated Dec. 14,

12

2005 (stating "medical condition was serious when it was diagnosed by a physician and mandating treatment").) He simply does not claim that Defendants, either at OCCC or later when he was transferred to HCF, delayed or denied him medical care. As such, Leong fails to state a claim for the delay or denial of medical care. This claim is dismissed for failure to state a claim, with leave granted to amend, if possible.

    B.    <u>Leong's Failure to Protect Claim is Dismissed.</u>

Prison officials clearly have a duty to protect inmates from violence at the hands of other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). To be liable for a failure to prevent harm, however, the official must know of and disregard an excessive risk to an inmates safety. *Id.*

Leong simply claims that prison officials failed to "watch inmates when we eat food." He does not allege that the other inmate deliberately spilled hot soup on him during a fight, and that prison officials had knowledge that this alleged assault was likely to happen. It is not even clear if Leong himself believes that the other inmate purposely assaulted him, or if Leong is simply seeking damages in tort for his injuries.[6] If this incident was accidental or simply a random act of violence, prison officials cannot be held liable for failing to prevent it.

---

    [6]Leong states that the inmate "wrongfully" spilled soup on his back. (Compl. 4 at ¶ 3.)

Similarly, if prison officials had no knowledge that the other inmate intended to harm Leong, or even that Leong feared harm from this inmate, they cannot be held liable for a failure to protect Leong from harm.  Leong alleges no facts to support a claim of failure to protect and this claim is dismissed for failure to state a claim, with leave granted to amend, if possible.

## CONCLUSION

IT IS HEREBY ORDERED THAT:

1.   Leong's claims for damages against all Defendants in their official capacities are DISMISSED with prejudice.

2.   Defendants Frank, Lingle, and the Director of the Department of Public Safety, are DISMISSED in their individual capacities with leave granted to amend.

3.   Leong's Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A.  Leong is GRANTED THIRTY DAYS LEAVE TO AMEND his Complaint, if possible, to cure the deficiencies discussed above.  **Failure to file an amended complaint within thirty days of this order will result in AUTOMATIC DISMISSAL of this action with prejudice pursuant to 28 U.S.C. § 1915A.  Such a dismissal shall count as one strike pursuant to 28 U.S.C. § 1915(g).**

4.   If Leong decides to amend the Complaint in accordance with this order, the amended complaint must "reproduce the entire

pleading as amended and may not incorporate any part of a prior pleading by reference." Local Rule 10.3. The document must bear the docket number assigned this case and must be clearly labeled "Amended Complaint."

     5.   The Clerk is DIRECTED to send Leong a prisoner civil rights complaint form. The Clerk is further DIRECTED to forward a copy of this order to Leong; to the Department of Public Safety's designee Tom Read at 919 Ala Moana Blvd., Honolulu, Hawaii, 96814; and to Mark J. Bennett, Attorney General of the State of Hawaii, at 425 Queen Street, Honolulu, Hawaii, 96813.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawaii; May 17, 2006.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Leong v. Frank, et al CIV. NO. 05-00716 SOM-LEK; ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915A; dmp\Screening Orders 06\Leong 06-77(dsm C FTSC 1983)